UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 15-82-DLB-CJS

BARI KEMPER                                                                          PLAINTIFF

vs.                           **MEMORANDUM OPINION**
                                     **AND ORDER**

LIFE INSURANCE COMPANY OF NORTH AMERICA, and
THE GAP, INC.                                                                        DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff Bari Kemper's Motion for Summary Judgment on the Administrative Record. (Doc. #22). Defendants having filed their Response (Doc. # 24), and Plaintiff having filed his Reply (Doc. # 26), this Motion is ripe for review. Having reviewed the parties' briefing, the Court will deny Plaintiff's Motion for Summary Judgment and will affirm Defendants' decision to deny Plaintiff's benefits.

## I.     Factual and Procedural Background

Plaintiff Bari Kemper began working for Gap, Inc. on March 6, 1998 and continued employment there until May 31, 2011, when a shoulder injury rendered him unable to perform his job as a merchandise handler. His shoulder was not his first medical condition that interfered with his daily living. In 2005, Kemper had surgery on his cervical spine, but an MRI in October 2008 showed spinal changes that required fusion surgery. His treating physician noted that Kemper recovered "phenomenally well" from that surgery. (Admin. Rec. at 740).

1

However, in 2011 Kemper began experiencing pain and problems with his neck and shoulder, in addition to his back. The combination of these injuries is what led Kemper to cease working on May 31 of that year. One of his treating physicians, Dr. Michael Rohmiller, believed that Kemper's neck pain was related to his shoulder issues rather than his back, and ordered an MRI. (*Id.* at 764).

That MRI showed a full-thickness, partial-width tear of Kemper's rotator cuff, tendonopathy of the infraspinatus tendon, and degenerative changes to the AC joint. (*Id.* at 756). Kemper was referred to Dr. Matthew Busam of the Cincinnati Sports Medicine and Orthopaedic Center. Dr. Busam scheduled Kemper for surgery on August 31, 2011, and indicated that Kemper would be unable to return to his job as a merchandise handler until February, 20, 2012. (*Id.* at 762-765). Ultimately, Dr. Busam determined that, because his maximum medical recovery still prohibited him from doing overhead work with his right arm and also restricted lifting with that arm to ten pounds or less, Kemper was incapable of returning to his job as a merchandise handler.

Through his employment with Gap, Kemper had a long-term disability plan. That plan is underwritten by Life Insurance Company of North America ("LINA"). The policy contains two definitions of disability, each pertaining to a different length of disability. Regardless of the which definition of disability applies, neither begins to run until after the 180-day elimination period is complete. Thereafter, during the first twenty-four months after the elimination period, the employee is entitled to disability benefits if they are unable to perform the material duties of their regular occupation and unable to earn 80 percent or more of their earnings from that regular occupation. (*Id.* at 883). This initial twenty-four month period standard of disability is know as "own occupation" disability. After the twenty-

four month period is up, an employee is entitled to continued disability payments only if they are unable to perform the material duties of any occupation for which they are qualified or may reasonably become qualified, "based on education, training, and experience," and unable to earn 60 percent or more of their prior earnings. (*Id.*) Thus, for continued long-term disability payments, the employee must meet the "any occupation" disability standard.

Kemper's initial elimination period ended on November 27, 2011. For the next twenty-four months, Kemper received long-term disability benefits from the his policy because he was incapable of performing his regular occupation, and thus met the "own occupation" standard. In late 2012, the Social Security Administration approved Kemper's application for disability benefits.

On April 18, 2013, LINA sent Kemper a letter informing him of changes to his plan benefits. Specifically, the letter explained that long-term disability benefits paid beyond twenty-four months would have to meet the "any occupation" standard, and that LINA was seeking current information from Kemper and his treating physicians to determine if he would meet that standard. (*Id.* at 267-68). Kemper indicated to LINA that he could not work in any occupation due to degenerative disc disease and other spinal issues. LINA requested that Kemper undergo Functional Capacity Evaluation, and though one was initially scheduled, it was cancelled because Kemper claimed a cardiac condition prohibited him from doing so.

Instead, Kemper was evaluated by Dr. Jose Luis Chavez on July 29, 2013. Dr. Chavez's Independent Medical Examination ("IME") greatly informed LINA's decision to deny Kemper's claim to long-term disability benefits under the "any occupation" standard. Dr. Chavez found that

3

> Mr. Kemper is capable at the current time of light work, based on physical demands category from the U.S. Department of Labor. He is able to lift 10 pounds regularly, occasionally up to 20 pounds. He will function better in a capacity where he can sit or stand at will. He is not allowed to do any overhead work or any overhead lifting. He will have difficulty working with machinery or any vibratory equipment and his job will require him to allow for repetitive standing, sitting, walking at will. There are no limitations on fingering, feeling, hearing, or speaking. These restrictions are permanent and supported by the clinical data provided and based on my examination.

(*Id.* at 523). In addition to his IME findings, Dr. Chavez also prepared a Physical Abilities Assessment ("PAA") on Kemper, and LINA conducted a Transferable Skills Analysis ("TSA") assessment for Kemper, which found three jobs in the local economy that Kemper could perform.

On September 9, 2013, based on the abovementioned findings, LINA denied Kemper's long-term disability benefits beyond November 28, 2013. LINA informed Kemper of its decision and of his appeal rights. LINA also noted that it had considered SSA's decision to award Kemper disability benefits, but had concluded that LINA had more current information that caused it to differ from SSA.

Kemper appealed LINA's decision, and an appeals specialist – who had no involvement with the initial determination – affirmed LINA's prior decision. The appeals decision was supported by a review of Kemper's entire medical file, including those records Kemper submitted himself, by Dr. Frank Polanco. Kemper was granted a second appeal, and another appeals specialist denied his claim. Kemper's entire medical file was again reviewed, this time by Dr. Ephraim Brenman. While a review by another TSA specialist ultimately reduced the number of jobs that Kemper could perform from three to two, the decision to deny benefits was again upheld.

4

His appellate rights being exhausted, Kemper filed this action challenging LINA's determination that he has not disabled under the policy's "any occupation" definition of disability. For the reasons stated herein, Plaintiff's motion for summary judgment on the administrative record will be denied, and LINA's determination will be affirmed as it is supported by substantial evidence.

## II.     Analysis

### A.     *Standard of Review*

The parties stipulate that this matter is governed by an arbitrary and capricious standard of review. The Court agrees. Denial of benefits challenged under the Employee Retirement Income Security Act ("ERISA") are reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063-64 (6th Cir. 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, the policy gives such discretion to the plan administrator. (Admin. Rec. at 883).

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Williams v. Int'l Paper Co.*, 227 F.3d 706. 712 (6th Cir. 2000) (citing *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). When reviewing a denial benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made. *McClain*, 740 F.3d at 1064 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998). The Court must decided whether the plan administrator's decision was "rational in light of the plan's provisions." *Williams*, 227 F.3d at 712 (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263,

5

267 (6th Cir. 1988)). Thus, "when it is possible to offer a reasoned explanation, based on the evidence, for particular outcome, that outcome is not arbitrary or capricious." *Id.* All this requires is for the plan administrator to employ a deliberate and principled reasoning process, and for its decision to be supported by substantial evidence. *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom. Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008). Further, the Court must accept the plan administrator's rational interpretation of a plan even if the claimant presents an equally rational interpretation. *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). None of this means, however, that the Court may merely rubberstamp the administrator's decision; instead, the Court must review the quality and quantity of medical evidence and the opinions on both sides of the issues. *Glenn*, 461 F.3d at 666 (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

      **B.**    *LINA's decision was not arbitrary or capricious*

LINA's decision to deny Kemper's benefits was the result of a deliberate reasoning process and is supported by substantial evidence. LINA utilized Dr. Chavez's IME and PAA reports in making its determination. Further, these reports and opinions were reviewed by two appeals specialists and two other doctors before a final decision was rendered. Such levels of review are tantamount to a deliberate reasoning process.

Additionally, the decision to find that Kemper was not disabled under the "any occupation" standard is supported by substantial evidence. In making his determination, Dr. Chavez not only examined Kemper, but also reviewed his entire medical file. Thus, Dr. Chavez's opinion incorporated not only his findings, but the prior findings of Kemper's doctors. Contrary to Kemper's protestations, Dr. Chavez's findings are not in any sort of

6

inextricable conflict with other doctors' opinions in this case. The closest thing there is to a conflict is Dr. Chavez's opinion that Kemper could lift 10 pounds regularly and up to 20 pounds occasionally. This is different than Dr. Busam, who opined in early 2012 that Kemper would not be able to lift more than 10 pounds. However, most of Dr. Chavez's opinion was consistent with Dr. Busam's: no overheard lifting and no overheard work. In addition, Dr. Chavez considered all of Kemper's other maladies when making his determination. Taking all factors into consideration, he determined that Kemper was capable of performing light work with certain limitations. And one cannot forget that plan administrators are not required to accord special deference to the opinions of treating physicians. *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010); *Hunt v. Metro. Life Ins. Co.*, 587 F. App'x 860 (6th Cir. 2014).

Further, it was Kemper's obligation to produce objective evidence of disability. Such a requirement is not irrational or unreasonable, even if such a requirement does not appear among the plan terms. *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007). Kemper has not produced such evidence. While he has subjectively claimed to be disabled, this is not enough to establish that he is in fact under a disability. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir. 1996) (holding the plan administrator did not act arbitrarily or capriciously where it chose not to find a claimant disabled where his complaints were unsubstantiated by diagnoses). Here, Kemper's complaints have been verified to some degree, but no doctor has made a diagnosis that renders him incapable of doing light work. Dr. Chavez's report was reasonable and reviewed by others, who found to be the same.

Kemper's strongest argument is that he should be considered disabled because the Social Security Administration found him to be so. However, Kemper's argument ignores two important differences that were addressed by LINA. First, LINA was operating on more current and complete information than SSA because it had nearly nine months of additional information. Second, and more importantly, the SSA standards are not binding on LINA, and they differ in important ways. Due to Kemper's age, the SSA regulations are more lenient than they otherwise would be. LINA was not required to treat Kemper differently merely because of his age. However, it was required, by the Plan's own terms, to consider whether he could retrain into a new position. LINA did so, stating that, although he had been in the merchandise warehouse for a while, Kemper had prior managerial experience and it believed he would be easy to retrain into one of the two positions he was capable of performing.

Additionally, it should be noted that Kemper was offered vocational training to help him transition from his job as a merchandise handler to a new position he would be capable of performing given his limitations. He never followed up with LINA or Gap regarding this retraining.

Thus, based on a thorough review of the record, the Court cannot say that LINA's decision was irrational. LINA's decision was reasonable and based on the objective evidence before it. The record indicates that Kemper suffers from various ailments, but does not require the Court to find irrational the decision that he could work in another light or sedentary occupation.

**III.    Conclusion**

Accordingly, **IT IS ORDERED** as follows

(1)     Plaintiff Bari Kemper's Motion for Summary Judgment on the Administrative Record (Doc. # 22) is **denied** in full;

(2)     LINA's decision to deny Kemper benefits is **affirmed** in full as it is not arbitrary or capricious and is supported by substantial evidence;

(3)     A Judgment in favor of the Defendants shall be entered contemporaneously herewith; and

(4)     This matter is hereby **stricken** from the Court's active docket.

This 31st day of August, 2016.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\Opinions\Covington\2015\15-82 MSJ MOO 2.wpd